Jones, J.
 

 Did Elizabeth, at the testator’s death, take a fee-simple title to the one-fifth interest in the home property, as the Court of Appeals held, or did her son David take a fee title thereto by way of executory devise at his mother’s death?
 

 The journal entries disclose that the common pleas court held that the true intention and construction of the second and third clauses of item six of the will require that they should be construed as if they read: “In case any of testator’s children shall die
 
 at any time
 
 leaving issue, the share of the devisee went to the issue; and if any of them should die
 
 at any time
 
 leaving no issue, the share of the deceased child was to be equally divided among the remaining children.” The Court of Appeals took a different view, holding that the second and third clauses in that item of the will contemplated that the limitation over to the surviving issue took effect only if the immediate devisee died
 
 *363
 
 prior to the testator’s death; or, as briefed by counsel for the defendant Harris, the words “in case any of my children shall die” do not mean “die at any time,” but import the death of the first devisee before death of the testator. Counsel on both sides have presented exhaustive briefs and have cited many cases in support of their respective contentions. We are of the opinion that many of the cited cases can be ignored and this eause determined (a) by construing the clauses in the will of the testator according to their natural import and meaning, and (b) by reference to the Ohio authorities, which we think announce the rule applying to the construction of wills where the language employed is similar to that used in the instant case.
 
 Parish’s Heirs
 
 v.
 
 Ferris,
 
 6 Ohio St., 563;
 
 Niles
 
 v.
 
 Gray,
 
 12 Ohio St., 320;
 
 Renner
 
 v.
 
 Williams, 71
 
 Ohio St., 340, 358, 73 N. E., 221;
 
 Briggs
 
 v.
 
 Hopkins, Exr.,
 
 103 Ohio St., 321, 132 N. E., 843.
 

 In the instant case Elizabeth survived the testator and had living issue at the time of his death. Had Elizabeth died leaving no issue her share would have passed to the remaining children, under the third clause of item six; and, if such contingency had occurred, the case of
 
 Parish’s Heirs
 
 v.
 
 Ferris, supra,
 
 would apply. Paraphrasing the syllabus in that ease and applying it to this, the syllabus would read in substance as follows: Where there is a devise in fee to Elizabeth Deshler, but in case she should die leaving no issue then to others in fee, the words “in case she shall die leaving no issue” will be interpreted as referring to the time of the death of Elizabeth. The latest case upon the subject, one interpreting a contingency clause- similar to that found in the Deshler will, is
 
 Briggs
 
 v.
 
 Hopkins, supra,
 
 which was given scant consideration by the intermediate court. Counsel for Mrs. Harris, supporting their contention that where there is a devise in fee followed by a limitation over on the devisee’s death the testator contemplated
 
 *364
 
 the devisee’s death within the testator’s life time, cite the case of
 
 Renner
 
 v.
 
 Williams, supra,
 
 and they devote several pages thereto. However, on page 358, Davis, J., delivering the opinion, clearly indicates that had the will there considered employed language of similar import as that contained in the Deshler will, such as, in case of death without issue or without legitimate heirs, or had the will specified some other similar contingency, the limitation over would- await the happening of such contingency.
 

 It was manifestly the intention of Mr. Deshler to keep the home property in his lineal line; he clearly provided that if any of his children should “die leaving issue” the child’s share should go to his or her issue, and if any of his children “should die leaving no issue” the share of such deceased child should be distributed among his remaining children equally. To construe this item of the will otherwise than as its language plainly indicates would destroy the testator’s intention; would place in his will words inconsistent with the natural import of the words used by the testator.
 

 Allusion to the statute preventing lapses (Section 10581, General Code, now Section 10504-73) does not aid the defendant. That section would prevent the lapse of devise to Elizabeth should she die before the testator; and if she died within that period leaving issue surviving the testator the issue would take the estate; and if she left no issue the residuary estate devised to her would vest in the residuary devisees surviving the testator, “unless a different disposition be made * # * by the will.” We think the will did make a different disposition, since the language used was general and not restricted to death of the devisee within the testator’s lifetime. The lapse statute applies to children not surviving the testator. Testator was presumed to know the law relating to his child dying before he did, and therefore must have had in
 
 *365
 
 contemplation a situation providing for the decease of his children at any time, whether before or after his death. This furnishes a cogent reason why the testator, in the second clause, did not limit his children’s deaths to a period prior to his own, but used general terms connoting the death of his children at any time. We are in accord with the view expressed in the opinion of the trial judge that, had the testator intended to limit the devisee’s death to a time within or during his own lifetime, it would have been a simple matter to have used language effectuating that purpose and intention.
 

 Briggs
 
 v.
 
 Hopkins, supra,
 
 is a case where the controlling facts were in substance as follows: A devise was made by a testatrix to her daughter with clauses providing two contingencies, as in this: (a) Bequeathing property to other kindred if the daughter “should die without issue,” and (b) bequeathing the property to the same kindred if the daughter should die leaving issue and the issue should die without issue. The testatrix died in February, 1895, and the daughter devisee died in March, 1918, leaving no issue, although she had living issue when the testatrix died. The syllabus reads as follows: “Where there is a devise or bequest to one coupled with the provision that if he die without issue such property shall go to another, the words ‘die without issue’ are to be interpreted as referring to the time of the death of the first taker, unless a contrary intention and purpose of the testator is clearly manifested.”
 

 Under the foregoing authorities, had Elizabeth died without issue, and had the remaining children made claim to the estate under the third clause of the item, the words “die without issue” would be interpreted as referring to the time of the death of Elizabeth, the first taker. By a parity of reasoning, where the devisee dies leaving issue, the use of the words “in case she dies leaving issue,” or words of similar im
 
 *366
 
 port, should likewise be referable to the time of the death of that devisee. In either event, whether dying with or without issue, the testator clearly indicated where his estate was to pass upon the happening of either event.
 

 We might supplement this opinion by the citation of a number of cases furnishing ample authority for the principle that the employment of both contingencies— that of dying with or without issue — does not change the rule of construction. Some of the cases cited involved single contingencies, and it is contended that the principle therein announced does not apply to double or alternative contingencies — such as dying with or without issue — which are found in the Deshler will. The argument of counsel for defendant in error is based upon the claim that since death with or without issue was certain, and must inevitably ensue, both contingencies fall by the wayside, and that the language employed in the second and third clauses of item six should be construed as referring to the death of the first taker within the lifetime of the testator.
 
 Renner
 
 v.
 
 Williams, supra.
 
 While there has been some early judicial support for such viewpoint, the overwhelming weight of authority is otherwise, holding that in cases where the two contingencies are employed by a testator neither should be disregarded, but both be given effect in order to sustain the testator’s intention. And why not? It is clear that the testator had in mind how his residuary property should go upon the happening of either contingency. The following cases are directly in point:
 
 Drager
 
 v.
 
 McIntosh,
 
 316 Ill., 460, 147 N. E., 433;
 
 Liesman, Exrx.,
 
 v.
 
 Liesman,
 
 331 Ill., 287, 162 N. E., 855;
 
 Rees
 
 v.
 
 Williams,
 
 165 N. C., 201, 81 S. E., 286;
 
 Lightfoot
 
 v.
 
 Beard,
 
 230 Ky., 488, 20 S. W. (2d), 90;
 
 Cooper
 
 v.
 
 Cooper,
 
 1 K. & J., 658, 69 Eng. Rep. R., 624;
 
 Bowers
 
 v.
 
 Bowers,
 
 L. R., 5 Chan. App. Cas., 244;
 
 Briggs
 
 v.
 
 Hopkins,
 
 103 Ohio St., 321, 132 N. E., 843.
 

 
 *367
 
 In the Ohio case, while this particular legal question was not discussed or treated in the syllabus, the will of Mrs. Brittain bequeathed her estate to her daughter Edna, upon two contingencies: One a disposition in case Edna shall “die without issue,” and another disposing of the property in case she ‘‘ should die and leave issue.” It is apparent that in the
 
 Briggs case,
 
 had this court sustained the contentions now made by counsel for defendant Harris, the judgment would have been otherwise.
 

 The pleadings, journal entries, finding of facts, and the opinions of the courts below disclose that their judgments were confined solely to the interpretation of the language used by the testator in item six of his will. Under the facts found and conceded, there is but one issue made, and that was the legal issue arising from the construction of the will. Under the circumstances a bill of exceptions was not necessary; and the motion of the defendants in error, entitled “Motion to Dismiss,” including its several branches, is overruled.
 

 The judgment of the Court of Appeals is reversed.
 

 Judgment reversed.
 

 Weyoandt, C. J., Day, Allen, Stephenson and Matthias, JJ., concur.
 

 Kinkade, J., not participating.